# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# THOMASVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal Action No. 6:05-cr-17 (HL) |
| | : | |
| W. DEXTER HARRISON, | : | |
| MARTIN L. HARRELL, and | : | |
| CHARLES L. HARRELL, | : | |
| | : | |
| Defendants. | : | |

_____

## ORDER

Before the Court is W. Dexter Harrison's Motion for Bond Pending Sentencing (Doc. # 232). For the reasons set forth below, Harrison's Motion is denied.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2006, a jury convicted Harrison on four counts: conspiracy to commit arson and mail fraud, arson, mail fraud and making misleading statements with intent to hinder law enforcement officials. (Doc. # 223.) Following Harrison's conviction, the Government moved that he be taken into custody, pursuant to the provisions of 18 U.S.C. § 3143(a)(2). The Court, finding the provision nondiscretionary, orally ordered Harrison's remand but invited a written motion for reconsideration should Harrison find any authority suggesting the Court had discretion regarding his detention. One week later, on March 15, 2006, Harrison submitted a motion (Doc. # 232), in which he argued the Court does, in fact, have the discretion to order his release, pursuant to 18 U.S.C. § 3145(c). The Government has filed a brief in response (Doc.

# 234), and Harrison has filed a reply (Doc. # 235).

**II.     ANALYSIS**

   **A.     18 U.S.C. § 3143(a)(2): Mandatory Detention**

As an initial matter, there is no dispute that 18 U.S.C. § 3143(a), which governs a court's ability to release a defendant who has been convicted but not yet sentenced, controlled the initial question of whether Harrison should have been released or detained on March 8, 2006. (Doc. # 232, Harrison's Mot. Bond Pending Sent. at ¶ 3; Doc. # 234, Gov't's Resp. Harrison's Mot. Bond Pending Sent. at ¶ 4.)  Section 3143(a)(2), in particular, requires:

> The judicial officer *shall* order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section § 3142 and is awaiting imposition or execution of sentence *be detained unless* —
> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (2000) (emphasis added).

Here, § 3143(a)(2) controls because Harrison was found guilty of an offense itemized in § 3142(f)(1)(A).  The first offense mentioned in § 3142(f)(1)(A) is "a crime of violence." 18 U.S.C. § 3142(f)(1)(A)(2005).  The federal guidelines define a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . . otherwise involves conduct that presents a serious potential risk

of physical injury to another." U.S.S.G. § 4B1.2(a). As the first application note to § 4B1.2 explains, "'[c]rimes of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, *arson*, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2, comment. (n.1) (emphasis added). In the United States Court of Appeals for the Eleventh Circuit, the commentary in the federal guidelines is treated as authoritative, unless it is plainly erroneous, is inconsistent with the regulation it interprets, or is contrary to the United States Constitution or federal law. See, e.g., United States v. Torrealba, 339 F.3d 1238, 1242 (11th Cir. 2003) (citations omitted). Thus, because Harrison was convicted of arson—a crime of violence—the Court was bound to evaluate his potential release under § 3143(a)(2) and to order his detention unless one of the exceptions listed therein was present. First, the Court found no substantial likelihood that a motion for acquittal or for a new trial would be granted. Second, no attorney for the Government recommended that a sentence of imprisonment not be imposed on Harrison; in fact, the Government has indicated to the contrary (Doc. # 243 at ¶ 4). Therefore, since neither of the exceptions under § 3143(a)(2)(A) were satisfied, the Court need not even have considered the question of whether Harrison was a flight risk or danger to the community. In accordance with the mandate of Congress, and obviated by the circumstances of his case, the Court remanded Harrison to custody. The Court has been presented with no reason to change its holding, and to the extent Harrison's motion constitutes a Motion for Reconsideration, it is denied.

  **B.**  **18 U.S.C. § 3145(c): Appeal for "Exceptional Reasons"**

### 1.     The Statute and the Parties' Interpretations

Harrison now argues (Doc. # 232 at ¶ 5) that the Court may exercise discretion and order his release pursuant to 18 U.S.C. § 3145(c), which reads:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c)(2000).

Harrison contends that 18 U.S.C. § 3145(c) grants this Court discretion to release him if two conditions[1] are met: (1) the Court finds by clear and convincing evidence he is unlikely to flee or pose a danger to anyone or the community, and (2) it is clearly shown that there are exceptional reasons why his detention would be inappropriate. (Doc. # 232 at ¶ 5.) The remainder of Harrison's motion attempts to offer such clear and convincing evidence and provide such exceptional reasons. The Government's Response does not challenge Harrison's reliance on § 3145(c), but instead argues his release is inappropriate because of the interaction between § 3143(a)(1) and § 3143(a)(2). The Government contends that because Harrison was convicted of a violent crime, his release must be considered under the conditions imposed by § 3143(a)(2), and the Court must evaluate his potential release not just under the risk of flight

---

[1] As previously noted, Harrison concedes he was subject to detention pursuant to § 3143(a)(2), fulfilling the initial prerequisite to a release by appeal under § 3145(c).

and danger to others criteria of § 3143(a)(1), and the exceptional reasons criteria of § 3145(c), but also under the provisions of § 3143(a)(2)(A)(i) or § 3143(a)(2)(A)(ii). Therefore, by the Government's reasoning, Harrison cannot be released because he has not met the conditions set forth in § 3143(a)(2), nor those in § 3143(b)(2). (Doc. # 234 at ¶ 3-4.) This interpretation by the Government of the test envisioned in § 3145(c) is incorrect.[2] Harrison's Reply focuses on the fact that the conditions relating to the likelihood of a motion for acquittal or new trial being granted and the recommendation of Government attorneys are found in § 3143(a)(2), rather than § 3143(a)(1), and that § 3145(c) specifically mentions a person must meet the conditions in (a)(1), not (a)(2). (Doc. # 235 at ¶ 3-5.)

Although Harrison contends that this Court has the jurisdiction to act under § 3145(c), and the Government has not challenged this assertion, federal courts should constantly examine a case's jurisdictional basis—even on their own initiative if necessary. Save the Bay, Inc. v. United States Army, 639 F.2d 1100, 1102 (5th Cir. 1981)[3] (citing Fed. R. Civ. P. 12(h)(3);

---

[2] The rationale underlying the Government's reasoning is, however, understandable. It is confusing that a defendant mandatorily remanded to jail under one provision, § 3143(a)(2), should be allowed to make an end-run around his detention by using another provision, § 3145(c), that utilizes "exceptional reasons" to short-circuit either the court's finding there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government's own recommendation that no sentence of imprisonment be imposed. Nevertheless, it is not the Court's role to question the wisdom of Congress, but rather to apply the law as written. Indeed, the question the Court has focused on in this order is not whether this "end-run" should be allowed, but to which court – district or appellate – it has been entrusted.

[3] The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc). This body of precedent is binding unless and until overruled by the Eleventh Circuit en banc. Id.

Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908)). In accordance with this obligation, the Court initially must consider whether it has jurisdiction to release Harrison pursuant to § 3145(c), regardless of any showing of exceptional reasons why his detention would be inappropriate.

### 2.     District Court's Jurisdiction—Collecting Cases

The question of whether district courts may avail themselves of § 3145(c), or whether the provision is the sole province of appellate courts, has been extensively examined in other federal courts for years. One of the most recent decisions to survey the legal landscape summarized the current state of affairs: "[t]he majority of courts—including every court of appeals—that have considered the question have concluded § 3145(c) allows district courts to release a defendant. A number of district courts, albeit a distinct minority, have held otherwise—that § 3145(c) is only available to the appellate courts." United States v. Chen, 257 F. Supp. 2d 656, 659 (S.D.N.Y. 2003) (footnotes omitted). Indeed, the Court is well aware that currently six federal circuit courts have held, in published opinions, that § 3145(c) provides district courts jurisdiction to consider "exceptional reasons,"[4] and another has indicated it might

---

[4] See United States v. Carr, 947 F.2d 1239, 1240 (5th Cir. 1991) (per curiam); United States. v. DiSomma, 951 F.2d 494, 496 (2d Cir. 1991); United States v. Herrera-Soto, 961 F.2d 645, 647 (7th Cir. 1992) (per curiam) (finding term "judicial officer" includes both district and appellate judges); United States v. Jones, 979 F.2d 804, 806 (10th Cir. 1992) (per curiam) (concluding without stating reasons that a district court may consider whether exceptional reasons exist to release a defendant under § 3145(c)); United States v. Mostrom, 11 F.3d 93, 95 (8th Cir. 1993) (accepting without analysis that a district court may utilize § 3145(c)); United States v. Garcia, 340 F.3d 1013, 1014 n.1 (9th Cir. 2003) (agreeing that district courts may consider whether exceptional reasons exist to grant bail without undertaking independent analysis).

hold similarly.[5]  Nonetheless, the Court finds the statutory interpretation of that "distinct minority" of district courts persuasive.  See, e.g., id. at 659-60 ("The holdings of the minority courts stand on firmer ground.  The courts in the majority have uniformly given the question cursory treatment, foregoing rigorous statutory analysis in favor of reliance on *stare decisis*.  Basic principles of statutory construction compel the conclusion that section 3145(c) is not available to district or magistrate judges.")

The court in Chen reached its holding after examining the "structure, language, and placement" of § 3145(c)[6] and dismantling a number of the arguments in favor of district courts having access to § 3145(c).  Id. at 660-64.[7]  The court began by looking at § 3145(c)'s title,[8] noting that it uses the word "appeal," which differentiates it from the two preceding sections

---

[5] United States v. Cook, 42 Fed.Appx. 803, 804 (6th Cir. 2002) (indicating in an unpublished opinion that district courts have jurisdiction to issue § 3145(c) relief).

[6] This analysis owed a great deal to the United States District Court for the Western District of Pennsylvania, which twice analyzed in detail the language and structure of § 3145(c) and was the first district court to interpret the provision as applying only to appellate courts.  See United States v. Salome, 870 F. Supp. 648 (W.D. Pa. 1994); United States v. Nesser, 937 F. Supp. 507 (W.D. Pa. 1996); see also United States v. Burnett, 76 F. Supp. 2d 846, 847-49 (E.D. Tenn. 1999) (examining the Salome and Nesser decisions and noting "[w]hile the Court finds the analysis of the Western District of Pennsylvania logical and persuasive, the Court notes the great weight of authority has reached a contrary conclusion, although in most cases in a peremptory manner without any detailed comment or analysis.").

[7] The Court notes several courts, including this one, have read DiSomma as resolving the issue of whether § 3145(c) is available to district courts in the Second Circuit, but that the court in Chen refuted this assumption and attempted to distinguish DiSomma.  See Chen, 257 F. Supp. 2d at 660 n.8.  Whether the Chen court correctly assessed the state of the law in the Second Circuit or not, its analysis of the underlying jurisdictional problem remains sound, and the Court presents it as such.

[8] See INS v. Nat'l Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

titled "review," and then cited Black's Law Dictionary, which defines an "appeal" as "to seek review (from a lower court decision) *by a higher court*." Id. at 660.  Next, the court pointed out that the first sentence in § 3145(c) includes the provision that an appeal under the section is governed by the provisions of section 1291 of title 28 and section 3731 of title 18, "both of which relate solely to review of a final order of a district court by a court of appeals."  Id. at 661.[9]  Then the court focused on the placement[10] of § 3145(c), arguing:

> If Congress had intended the "exceptional reasons" provision of section 3145(c) to be an available alternative to mandatory detention under section 3143(a)(2) and (b)(2), it is surely misplaced in a section governing appellate review.  Had Congress simply added the "exceptional reasons" language to section 3143, there would be no question as to its availability to district courts. . . . Why would Congress, primarily concerned with amending section 3143, place the "exceptional reasons" provision in an entirely different section?  The only plausible answer is the one supported by the text itself: Congress intended section 3143(c) for the appellate courts alone.

Id.

Finally, the court compared Federal Rule of Criminal Procedure 46 ("Release from Custody"), applicable to the district courts, with Federal Rule of Appellate Procedure 9 ("Release in a Criminal Case"), applicable to the courts of appeals.  This comparison led to the

---

[9] The Chen court also cited to a case decided by the Supreme Court of the United States which explained that after a judicial officer had determined the appropriateness of detention, "[t]he Act's review provision, 3145(c), provides for immediate *appellate* review of the detention decision."  See Chen, 257 F.Supp.2d at 660-61 n.14 (citing United States v. Salerno, 481 U.S. 739, 752 (1987)) (emphasis added).

[10] See Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

conclusion that "[a]ny ambiguity about the 'exceptional reasons' provision created by its placement in 3145(c) is therefore answered by Congress' clear statement: a district court considering release pending sentence or appeal is to look *only* at section 3143 [per Federal Rule of Criminal Procedure 46]; a court of appeals should look at sections 3143 *and* 3145(c) [per Federal Rule of Appellate Procedure 9]." Id. at 662.

The Chen court then proceeded to deconstruct the three reasons proffered in Carr, the earliest appellate case to find a district court had authority to use § 3145(c), and the one that contains the most in-depth analysis. First, while conceding that the term "judicial officer" could sometimes encompass district judges, the Chen court argued "its use in section 3145(c) is narrower for the reasons already discussed. Statutory terms must be read in context, even when they are given explicit definitions. In the context of a provision dealing with appellate review, 'judicial officer' must be read to mean only appellate judges." Id. at 663. Second, the court disdained to lend weight to the idea from Carr that an appellate court was bound by the prior actions of two district courts from other circuits, a "surprising" argument that "confuses what the law *is* with what other (lower) courts have *taken it to be*." Id. Third, although the court agreed that the "exceptional reasons" provision was added to § 3145(c) with the mandatory detention provisions of § 3142(a)(2) and (b)(2) in an apparent effort to allow potential discretionary relief, it found "there is *no* suggestion in the statute or its meager legislative history that this alternative avenue was intended to be available to the district courts."[11] Id.

---

[11] The court in Chen also proffered its own hypothetical explanation for why Congress might have chosen to reserve the "exceptional reasons" alternative to the appellate courts: Congress "wanted

Therefore, the court in Chen concluded, the plain language of § 3145(c) must be followed, and its use restricted to the appellate courts.  Id.

Another court recently reached the same conclusion as the Chen court through a similar analysis, having examined the plain language of § 3145(c) and the overall structure and placement of the provision.  See In re: Sealed Case, 242 F. Supp. 2d 489, 491-92 (E.D. Mich. 2003).  The court also rejected the argument that § 3145(c) is applicable to district courts simply because federal appellate courts are not positioned to make factual findings, noting that "the courts of appeals have the ability, indeed the responsibility, to make independent factual findings in proceedings arising under the Bail Reform Act."  Id. at 492-93.  Furthermore, the court posited that recent amendments to Rule 9 of the Federal Rules of Appellate Procedure ("Release in a Criminal Case"), which contemplate the federal appellate courts making "exceptional reasons" determinations under § 3145(c) and direct the appellate courts to look to § 3145(c) in making release decisions, bolster the contention that § 3145(c) was created solely for the appellate courts.  Id. at 493-94.  The court then proceeded to distinguish the circuit opinions that have held to the contrary, as having either ignored basic principals of statutory construction or abandoned independent analysis altogether, concluding "*the Court finds the so-called weight of these circuit opinions much lighter than a momentary glance at a string cite to all five would otherwise suggest*."  Id. at 494.

---

to provide an escape clause, but only to a reviewing court based on a 'cold' record.  Congress might reasonably have worried that district courts, facing a defendant and his family in the courtroom, would stretch the 'exceptional reasons' language to release defendants worthy of sympathy, but in no way exceptional."  Chen, 257 F. Supp. 2d at 664.

Finally, the court dispensed with three policy arguments advanced by the parties in the case: (1) forcing appeals to the appellate court would take too much time and reduce defendants' proposed cooperation, (2) denying § 3145(c) relief at the district court level would disrupt the guilty plea process, and (3) courts should respect matters brought before it upon a stipulation by both parties.[12] Id. at 495-96. While expressing sympathy for these arguments, the court found no escape from the fact that "this Court is not the legislature. The Court lacks the authority to amend the United States Code. As Justice Scalia has stated: 'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" Id. at 496 (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (Scalia, J., for the unanimous Court)).

### 3. District Court's Jurisdiction—Eleventh Circuit and This Court

Despite the extensive discussion of the jurisdictional reach of § 3145(c) in other courts, there is no binding precedent on point in this Circuit. The Eleventh Circuit has never addressed whether a district court may utilize § 3145(c) in its initial detention determination or whether it may use the provision to review its own previous ruling.[13] While three district courts in the

---

[12] The Government had joined the defendant's appeal of the court's mandatory detention order under § 3145(c) in this case.

[13] The Court could only find one time § 3145(c) has been mentioned in an Eleventh Circuit case. In United States v. Auriemma, one judge, concurring in part and dissenting in part, noted, "Auriemma appeals from this release order as provided for in 18 U.S.C. § 3145(c). We have jurisdiction under 28 U.S.C. § 1291." Auriemma, 773 F.2d 1520, 1524 (11th Cir. 1985) (Clark, J., concurring in part and dissenting in part). If anything, this statement might be said to support the Court's position, but as it carries no precedential weight and was extremely brief and lacking in any explanation, the Court shall consider the Eleventh Circuit's slate currently blank on this matter.

11

circuit have concluded they may consider a defendant's motion under § 3145(c), they did so without any in-depth discussion of potential jurisdictional problems, simply accepting that the majority of other courts that have examined the issue had found the section applied to district courts.  See United States v. Pope, 794 F. Supp. 372, 373 (S.D. Fla. 1992); United States v. Bryant, 873 F. Supp. 660, 662-63 (N.D. Ga. 1994); United States v. Hooks, 330 F. Supp. 2d 1311 1312 (M.D. Ala. 2004); but see United States v. Adomako, 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2001) ("The government may obtain review of a magistrate judge's release order by filing a motion for revocation of the release order in the district court, which motion will be determined promptly.  18 U.S.C. § 3145(a).  Further review of a release order may be had in the court of appeals.  18 U.S.C. § 3145(c).")

Therefore, the Court is free to engage in its own jurisdictional inquiry.  As such, the Court finds the statutory interpretation of the "distinct minority" of district courts persuasive.  As the court in Salome convincingly held:

> [T]he court finds that the jurisdiction established by § 3145(c) is appellate jurisdiction, not original jurisdiction to act independently.  Accordingly, as this court issued the defendant's detention order in the first instance, we have no authority pursuant to § 3145(c) to determine whether there are "exceptional reasons" that make defendant's detention inappropriate in this case.

Salome, 870 F. Supp. at 652.

The Court makes this ruling having considered the multiple circuit and district court decisions to the contrary.  "These circuit court decisions, however well-intentioned, reflect a certain circularity of reasoning . . . . [f]urthermore, these decisions ignore certain fundamental

12

principles of statutory interpretation." Id. (quotation and citation omitted). Finally, the Court recognizes that Harrison may still appeal the March 8, 2006 detention order to the Eleventh Circuit Court of Appeals—under provision § 3145(c).[14]

### III.  CONCLUSION

Harrison's Motion for Bond Pending Sentencing (Doc. # 232) is denied.

SO ORDERED, this the 24th day of March, 2006.

                                                                       s/  Hugh Lawson
                                                                         HUGH LAWSON, JUDGE

pdl

---

[14] A district court's detention order qualifies as a final order that may be appealed directly to the court of appeals. See 18 U.S.C. § 3145(c); 28 U.S.C. 1291. However, because the Court invited Harrison to submit a motion for reconsideration, and it has construed the instant motion (Doc. # 232) as such, the ten day deadline Harrison has to appeal this new final order regarding his detention shall begin from the date this order was entered. Therefore, Harrison still may appeal his detention, ordered on March 8, 2006, to the Eleventh Circuit.